MICHAEL J. CLEARY *et al.*

*v.*

CHARLES F. HOOBLER *et al.*

*Opinion filed February 17, 1904.*

1. MANDAMUS—*facts alleged in petition and not denied by answer are admitted.* A proceeding for *mandamus* is a suit at law, and all facts properly alleged in the petition which are not denied in express terms by the answer are admitted to be true, and averments of the answer merely disclaiming knowledge of the facts alleged in the petition have no effect.

2. STATUTES—*intention to give statute retrospective operation must be clearly expressed.* Even in cases where the legislature might lawfully affect existing rights, the intention to give a statute retrospective operation must be clearly manifested, and in case of doubt the act will be construed as having prospective effect, only.

3. DRAINAGE—*act authorizing dissolution of district does not apply to districts organized prior to 1885.* The act of 1889, (Laws of 1889, p. 119,) adding section 47½ to the act of 1885 and providing for the dissolution of drainage districts, refers to districts organized under the act of 1885, and not to those organized under prior acts, which were expressly repealed by the act of 1885.

4. SAME—*commissioners of district organized under act of 1879 may be compelled to make repairs.* Commissioners of a drainage district organized under the Farm Drainage act of 1879 may be compelled by *mandamus* to levy assessments and make repairs, and are liable to penalties for failure to perform their duties.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

D. D. DONAHUE, and J. J. MORRISSEY, for appellants.

ROWELL, NEVILLE & LINDLEY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants·filed in the circuit court of McLean county their petition for a writ of *mandamus* directing appellees, as drainage commissioners of district No. 1 in Gridley township, in said county, to levy assessments on the

207—7

lands benefited within the said drainage district, for the purpose of repairing and maintaining the main ditch of the district through the lands of petitioners, and to repair and maintain the same so as to carry off the water flowing into it. The defendants answered the petition, setting up as a defense that the district had been dissolved and ceased to exist. Petitioners demurred to the answer generally and specially, and the demurrer being overruled, they elected to stand by it. The court thereupon dismissed their petition and entered judgment against them for costs. The appeal was taken to this court on the ground that the constitutionality of the statute authorizing the dissolution of a district organized before its passage is involved in the litigation.

The petition alleges that drainage district No. 1 in Gridley township, in McLean county, was organized in the year 1884 under an act entitled "An act to provide for the organization of drainage districts and to provide for the construction, maintenance and repair of drains, and ditches, by special assessments on the property benefited thereby," approved May 29, 1879, in force July 1, 1879, (Laws of 1879, p. 142,) and amendments to said act passed in 1881 and 1883; that the petitioner Cleary is the owner of two hundred and forty acres and the petitioner Stokes is the owner of eighty acres in township 26, range 2, in Gridley township and in said district; that the main ditch of the drainage district was constructed over their lands; that a large territory lying south-west, west and north-west, within the district, is drained through the ditch; that the ditch has become filled up by its banks caving in and the clay and other material being washed into it from the lands drained, and the weeds and grass have been permitted to grow in it, so that the ditch is inadequate and insufficient to carry off the water drained into it from said territory; that the waters flowing into the ditch from other lands have during the last two years overflowed the banks and

spread over the lands of petitioners, making them unfit for cultivation and destroying their crops, and that petitioners have made demands on the defendants to levy an assessment and to repair and improve said ditch so as to carry off the water drained into it.

In answering the petition defendants seem to have misapprehended the nature of the suit, and the answer is somewhat after the form of an answer in chancery. The proceeding for *mandamus* is a suit at law, and the rules of pleading are the same as in other suits at law. All the facts properly set forth in the petition which are not denied in express terms by the answer are admitted to be true. (*Chicago and Alton Railroad Co.* v. *Suffern*, 129 Ill. 274; *People* v. *Crabb*, 156 id. 155; *Mayor of Roodhouse* v. *Briggs*, 194 id. 435; 13 Ency. of Pl. & Pr. 734.) The answer admits some of the averments and contains no direct or express denial of any specific fact alleged in the petition, and the facts alleged are therefore admitted. Averments that the defendants do not know whether the proceedings in organizing the district were in due form of law or not; that they do not know under what act of the legislature the district was established, and that they neither admit nor deny the allegations that the district was duly organized, have no effect whatever.

The defense that the district has ceased to exist is founded upon the following allegations of the answer: That the act of 1879, under which the district was organized, was repealed by an act entitled "An act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, in force July 1, 1885; (Laws of 1885, p. 78;) that said act of 1885 took the place of the previous act of 1879, and the district continued to exist as a drainage district under the act of 1885; that section 47½ was added to said act of 1885 by an act approved June 3, 1889, in force July 1, 1889, (Laws of 1889, p. 119,) providing for the dissolution of districts organized under said act of 1885, and

that the drainage district was dissolved on August 10, 1895, in pursuance of the provisions of that section, on petition of two-thirds of the owners of land in the district.

The grounds upon which it is claimed that the court erred in overruling the demurrer to the answer are: First, that section 47½, which was added to the act of 1885 by way of amendment in 1889, does not authorize the dissolution of drainage districts organized under the act of 1879; second, that said section is in violation of various provisions of the constitution as applied to districts organized before its passage; and third, that the proceedings for the dissolution of this drainage district are null and void. The second and third of said propositions are fairly involved in the case, but we have not found it necessary to consider any question except the first one, relating to the application of section 47½ to this district.

Generally, statutes are to be treated as establishing rules for the future, and even where the legislature may lawfully limit or affect existing rights, an intention to do so will not be presumed unless it clearly appears. The rule is well established that a retrospective operation of a statute is not favored. Such an intention must be manifested by clear and unequivocal language, and in case of doubt the statute must be construed to have a prospective effect, only. (*Thompson* v. *Alexander,* 11 Ill. 54; *McHaney* v. *Trustees of Schools,* 68 id. 140; *Means* v. *Harrison,* 114 id. 248; *In re Day,* 181 id. 73.) This is a case where that rule ought to be applied if it can be, and the statute should be restricted in its operation to districts organized after its enactment, unless it is clear that the intention of the legislature was otherwise.

The act of 1879 provided for the organization of drainage districts and the construction of ditches by assessments of benefits and damages to the land owners within the district. It contemplated that some lands would be benefited and other lands would be injured; that some

would be both benefited and damaged; that the benefits might exceed the damages or the damages exceed the benefits, and that assessments should be made of damages and benefits, so as to do justice to all the owners within the district. Section 38 provided for maintenance and repair and for future assessments, and was as follows: "All ditches and drains shall, at all times, be kept in good order and repair by the commissioners, and the lands affected by said work shall pay their proportionate amount of costs, which shall be in the same proportion that the lands were originally assessed." Penalties were imposed upon the commissioners for failure to perform the duties imposed upon them by the provisions of the act, and there was no provision for the dissolution of a district, or the release of those benefited from their obligation and the imposition of the entire burden upon those who are injured. This district was organized under that law, which created an obligation to maintain the drains and ditches on petitioners' lands at all times, and the property benefited thereby was liable to be assessed for such maintenance. If the commissioners failed to keep the ditch in repair, the law gave petitioners a remedy, by *mandamus*, to compel them to levy assessments and make repairs, and the commissioners were also liable to penalties for failure to perform duties. If the right of way for the ditch was obtained by agreement it was in view of the provisions of the law with reference to maintenance and repair, and if it was condemned it was upon that basis. To apply the subsequent statute in a retrospective way to a district so organized would be contrary to natural justice, and deny to petitioners a right to have the ditch maintained so as to carry off the water cast upon their lands, as the law provided would be done. The intention to commit such an act of injustice should not be attributed to the legislature if it can be avoided. A construction of the statute which would continue the use of the ditch on petitioners' land for the benefit of other proprie-

tors who are released from their obligation should not be considered within the legislative intent unless such intent is clear, regardless of any constitutional question.

In our opinion the language of the statute does not manifest such an intention, but rather the contrary. The act of 1885 in express terms repealed the act of 1879, under which the drainage district was organized, together with amendments thereto and other acts named in the repealing section. The act of 1885 was not an amendment of previous acts, but was declared to be an amendatory revision and consolidation of the acts repealed, and an independent act, except as it was a codification and amended successor of the first three acts mentioned in the repealing section, which included the act of 1879 and the amendments. The repealing section contained the following provision: "All drainage districts heretofore organized under any one or more of the acts hereby repealed shall be held, and they are hereby declared to be legally organized, and the assessments made therein shall be held to be legally made.   *   *   *   The officers, under the repealed act, and proceedings begun, shall be continued under this act, and shall have and possess all the rights, powers and privileges the same and to the same extent as though the whole proceedings were commenced and carried on under the provisions of this act, and only affected as to the future as herein provided." There was no provision in the act of 1885 for the dissolution of a drainage district, but in 1889 the act referred to in the answer was passed, by which section 47½ was added, providing that a drainage district should be dissolved without notice or a hearing, or any adjustment of rights or duties, whenever two-thirds of the owners of land owning two-thirds of the land in the district should sign a petition for the dissolution. It provided that the district should still have the use of the drains, and a person over whose lands a ditch had been constructed should not be allowed to obstruct the use or proper working of

the ditch. The effect of the provision would be to release the lands benefited by the drainage furnished by the ditch from assessments to maintain and keep it in repair, while the owners still have the right to gather the waters on their lands and cast them into the ditch. The operation of the section is limited to drainage districts organized under the act of 1885, the language being, "any drainage district organized under this act." This district was not organized under that act, but under the previous independent act of 1879, which was expressly repealed by the act of 1885. The district was continued as a drainage district under the act of 1885 by virtue of the above provision that all drainage districts previously organized under any one or more of the acts repealed should be continued under the new act. Such districts are nowhere referred to in the act of 1885 as being organized under it, but, on the contrary, are described as districts organized under the acts thereby repealed.

Counsel for appellants say that if land owners were authorized to proceed to obtain a dissolution of the district they should have proceeded under the general act providing for such dissolution in force July 1, 1889, (Laws of 1889, p. 117,) which provides for notice and a hearing, and which was held not in conflict with the constitution in the case of *Hollenbeck* v. *Detrick*, 162 Ill. 388. The validity of that act was established by that decision, and it applies to all drainage districts, whether organized as this district was or by proceedings in the county court.

It is urged that petitioners are estopped to question the dissolution of the district by delay in bringing their action. It is not contended that they are barred by any statute of limitations, and there is nothing appearing which could amount to an estoppel.

The judgment of the circuit court is reversed and the cause is remanded, with directions to sustain the demurrer to the answer.          *Reversed and remanded.*