THE BARRETT MANUFACTURING COMPANY, Defendant in Error, *vs.* THE CITY OF CHICAGO, Plaintiff in Error.

*Opinion filed October 28, 1913.*

1. APPEALS AND ERRORS—*when a constitutional question is involved.* Where the plaintiff in error, in order to secure a reversal of a decree, must succeed in establishing not only that certain amended ordinances are applicable to the case but also that if applicable they are a valid exercise of the city's legislative power, a constitutional question is involved, authorizing a direct review of the decree by the Supreme Court, even though that court may find it unnecessary to decide it.

2. ORDINANCES—*intention that an ordinance shall have retrospective operation is not presumed.* An intention that a statute or an ordinance shall have a retrospective operation is not to be presumed but must be manifested by clear and unequivocal language, and in case of doubt the statute or ordinance must be construed to have prospective effect, only.

3. SAME—*when ordinance regulating construction of buildings for storage of tar does not apply.* An ordinance which provides

that it shall "hereafter" be unlawful to erect a building for the storage of certain liquids, including tar or any compound thereof, within three hundred feet of a residence, cannot, in the absence of words showing such intention, be held to apply to buildings intended for such purpose for which a permit was lawfully issued before the ordinance was amended to include tar or any compound thereof, and the construction of which was well advanced at the time of the amendment.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (NICHOLAS MICHELS, and A. L. GETTYS, of counsel,) for plaintiff in error.

JOSEPH B. FLEMING, (EDWIN H. CASSELS, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The superior court of Cook county perpetually enjoined the city of Chicago from interfering with the Barrett Manufacturing Company in the erection, removal and construction of certain tanks for the storage of crude coal tar and its products, and the city sued out this writ of error to reverse the decree.

The Barrett Manufacturing Company is a corporation which has been engaged for forty-five years in the manufacture and sale of roofing and paving materials and coal tar products in the city of Chicago, and maintains at Sacramento avenue and Twenty-ninth street, which is in a manufacturing district, a plant covering twenty-four acres, on which for the last three years its principal plant has been located. It is necessary in the conduct of its business to maintain large storage tanks on the premises for the storage of what is known as "coke oven tar," which will stand a test of 190 degrees Fahrenheit according to the methods

of John Tagliabue, and is not combustible so as to menace
the property or lives of people in the vicinity.  During 1912
the company decided to construct additional tanks having an
aggregate storage capacity of 50,000 barrels, and upon its
application, accompanied by plans and specifications, the
building commissioner of the city on July 31, 1912, issued
a permit for the construction of· eleven storage tanks.  The
company also maintained a plant at 900 West Division
street, at which were used similar large storage tanks, and
desiring to move three of these tanks to the plant at Sac-
ramento avenue and Twenty-ninth street, it applied to the
building commissioner and on July 24, 1912, received a per-
mit for such removal.  The liquids intended to be stored in
these tanks will stand the test of 150 degrees Fahrenheit or
more according to the methods of John Tagliabue.  With
reference to both these permits, and the applications for
them, the company complied in every particular with sec-
tions 229 and 230 of the Chicago code of 1911.  Those
sections are as follows:

"229. When required—limitations of time for.]  Be-
fore proceeding with the erection, enlargement, alteration,
repair or removal of any building or structure in the city,
a permit for such erection, enlargement, alteration, repair
or removal shall first be obtained by the owner or his agent
from the commissioner of buildings, and it shall be unlaw-
ful to proceed with the erection, enlargement, alteration,
repair or removal of any building, or of any structural part
thereof, within the city unless such permit shall first have
been obtained from the commissioner of buildings; and if,
after such permit shall have been granted, the operations
called for by the said permit shall not be begun within
six months after the date thereof, or if such operations
are not completed within a reasonable time, then such per-
mit shall be void and no operations thereunder shall be be-
gun or completed until an extended permit shall be taken
out by the owner or his agent, and a fee of ten per cent

of the original cost of permits shall be charged for such extended permit.

"230. Permits—application for—how made—how recorded—stamped plans—how cared for—return of same.] (a) Application for building permits shall be made by the owner or his agent to the commissioner of buildings. When such application is made, plans in conformity with the provisions of this chapter, which have been examined and approved by the commissioner of buildings and his assistants, as hereinbefore provided for, shall be filed with the commissioner of buildings. He shall then issue a permit and shall file such application, and shall apply to such plans a final official stamp, stating that the drawings to which the same has been applied comply with the terms of this chapter. The plans so stamped shall then be returned to such applicant. True copies of so much of such plans as illustrate the features of construction and equipment of the buildings referred to shall be filed with the commissioner of buildings and shall remain on file in his office for a period of six months after the occupation of such building, after which such drawings shall be returned by the commissioner of buildings to the person by whom they have been deposited with him, upon demand. It shall not be obligatory upon the commissioner of buildings to retain such drawings in his custody for more than six months after the occupation of the building to which they relate."

At the times when these permits were, respectively, issued, there were in force in the city of Chicago certain other ordinances known as sections 691, 692, 693, 1432 and 2358, which were afterward, on August 14, 1912, amended. The amendments in each case consisted of the addition of certain words, and the ordinances, so far as they are material here, were as follows, the amendments being indicated by italics:

"691. Construction of buildings for storage of oils hereafter prohibited, except, etc.] (a) It shall hereafter

be unlawful for any person, firm or corporation to build, construct or erect any building designed for the storage of crude petroleum, gasoline, naphtha, benzine, camphine, carbon oil, *tar or any compound thereof,* spirit gas, burning fluid, spirits of turpentine, coal oil, earth oil, or any other liquid except such as will stand a test of 150 degrees Fahrenheit according to the method of John Tagliabue: *Provided, however, that no such building shall hereafter be constructed within three hundred feet of any building used in whole or in part for residence purposes.* * * *

"692. Storage of oils.] (a) It shall be unlawful for any person, firm or corporation to keep or store crude petroleum, gasoline, naphtha, benzine, camphine, carbon oil, *tar or any compound thereof,* spirit gas, burning fluid, spirits of turpentine, coal oil, rock oil, earth oil, or any other liquid except such as will stand a test of 150 degrees Fahrenheit according to the method of John Tagliabue, in any quantity exceeding ten gallons, upon or in any building, structure or premises within the city of Chicago, except in such a building or structure as has been heretofore constructed in accordance with the provisions of section 691 or in such tanks as are provided for in section 693 of the Chicago code of 1911. * * *

"693. Tanks for storage of oils.] (a) Any person, firm or corporation desiring to use any space underneath the surface of the ground or underneath any building in the city of Chicago, except in such a building or structure as was formerly authorized under the provisions of section 691 of this article, for the construction, maintenance or use of any tank thereunder for the storage of any one or more of the oils or fluids mentioned in section 692, shall first obtain a permit so to do from the commissioner of buildings of the city of Chicago, and the applicant shall pay to the city collector a fee of two dollars ($2) for each tank prior to the issuance of each permit, which fee shall cover the cost of the inspection thereof, and no such permit shall

be issued without first being approved by the fire marshal of the city of Chicago, and said permit may be revoked by the.mayor at any time for a just cause.

"1432. The owner, lessee, tenant, occupant or manager of every blacksmith or other shop, forge, coal yard, brick yard or place where bricks are manufactured, foundry, manufactory and premises where like business is done, *or any factory or premises in which tar or any compound thereof is handled, used or manufactured,* shall cause all ashes, cinders, rubbish, dirt and refuse to be removed to some proper place, so that the same shall not accumulate at any of the above mentioned premises, or in the appurtenances thereof, and the same become filthy and offensive; nor shall any such owner, lessee, tenant, occupant or manager cause or allow any dense smoke, cinders, dust, gas or offensive odor to escape from any such building, structure, place or premises which shall be offensive or prejudicial to the health or dangerous to the life of any person or persons not being therein or thereupon engaged; and it is hereby declared to be a nuisance to permit any ashes, cinders, rubbish, dirt or refuse to accumulate on any of the above mentioned premises, or the appurtenances thereof, and become filthy or offensive, or to cause or allow any dense smoke, cinders, dust, gas or offensive odor to escape from any such building, structure, place or premises, and the commissioner of health, or any officer designated by him, may summarily abate the same.

"2358. The emission of dense smoke within the city from the smokestack of any locomotive, steamboat, steam tug, steam roller, steam derrick, steam pile-driver, tar kettle, or *any* other similar machine or contrivance, *or from any open bin, tank, vat, basin or other receptacle,* or from the smokestack or chimney of any building or premises, excepting for a period of six minutes in any one hour during which the fire-box is being cleaned out or a new fire being built therein, is hereby declared to be a nuisance, and may

be summarily abated by the smoke inspector or by anyone whom he may duly authorize for such purpose. Such abatement may be in addition to the fine hereinafter provided. Any person, firm or corporation owning, operating or in charge or control of any locomotive, steamboat, steam tug, steam roller, steam derrick, steam pile-driver, tar kettle or other similar machine or contrivance, *or any open bin, tank, vat, basin or other receptacle,* or of any building or premises, who shall cause or permit the emission of dense smoke within the city from the smokestack or chimney of any such locomotive, steamboat, steam tug, steam roller, steam derrick, steam pile-driver, tar kettle or other similar machine or contrivance, *or from any open bin, tank, vat, basin or other receptacle,* or from the smokestack or chimney of any building or premises so owned, controlled or in charge of him, her or them, except for a period of six minutes in any one hour during which the fire-box is being cleaned out or a new fire being built therein, shall be deemed guilty of a violation of this section, and upon conviction thereof shall be fined not less than $10 nor more than $100 for each offense; and such emission of dense smoke in violation of the provisions of this section shall constitute a separate offense for each and every day on which such violation shall continue."

The company entered upon the work of removal and of erection of the new tanks at once upon the issue of the permits and had incurred large expense in its performance, all work having been done according to the permits and approved plans and specifications, when on August 21, 1912, and at other times, police officers of the city, under instructions from the building commissioner and the chief of police, stopped the work and refused to allow the company to proceed with it. Thereupon the company filed its bill on September 3, 1912, in which it stated the facts which have been hereinbefore stated in regard to its business and the necessity of the construction of additional storage tanks,

and averred that it was informed that it was a condition prerequisite to the construction of such tanks that it should obtain a permit in compliance with the ordinances of the city then in force, which were set out in the bill in full, being sections 691 and 692 as above set forth prior to the amendment. The bill then alleges the application made to the building commissioner and the issue of the permit of July 31, 1912, for the erection of the eleven tanks and the entering upon the work of construction in pursuance of such permit and in accordance with the ordinances above set forth. It is then averred that the city council, on August 14, 1912, amended the ordinances in the manner above set forth, and that afterward, on August 21, 1912, police officers of the city, under instructions of the building commissioner and the chief of police, stopped the work and refused to allow it to proceed because of the amendment of sections 691 and 692 as above set forth. The bill avers that the effort to give the amendment of those sections a retroactive operation deprives the complainant of its property without due process of law, in contravention of section 2 of article 2 of the constitution, and prays for an injunction restraining the city from interfering with the completion of the work. Afterward, on September 24, before any appearance by the defendant, the complainant filed an amended bill, which omitted all mention of sections 691 and 692 but instead alleged that as a condition prerequisite to the erection of the tanks a permit must be obtained from the building commissioner in compliance with ordinances of the city then in effect, being sections 229 and 230 above set forth. The amended bill contained no allusion to sections 691 and 692, but averred the stoppage of the work by the city officials and prayed an injunction as in the original bill.

The city filed an answer, which admitted some of the allegations of the bill and denied others, and which alleged that the products kept on the complainant's premises and the operation of its manufacturing establishment not only

were a menace and danger to property in the immediate
vicinity, but were extremely dangerous to the safety, health,
comfort and welfare of the people residing or doing busi-
ness within a large radius of the vicinity of said estab-
lishment, and that the complainant is not entitled to the
protection of a court of equity because it has been, and is
now, maintaining on its premises a public nuisance, to the
irreparable damage of property in the vicinity and as a
grave menace and danger to the health, safety and comfort
of the people residing in the vicinity of the complainant's
premises, contrary to the provisions of the ordinances of
the city of Chicago, and because the complainant intends
to, and will, construct and maintain the said large tanks in
violation of the ordinances of said city. The answer fur-
ther alleged that the provisions of certain ordinances of the
city of Chicago must be complied with by the complainant
before it is entitled to any relief, setting such ordinances
forth at length, being sections 691, 692 and 693 as they
were before their amendment, and averring the amendment
of said sections on August 14, 1912. It is also averred
that the conditions as they now exist are such as endanger
the lives, safety, health and comfort of residents and busi-
ness men in the vicinity, particularly through the emis-
sion of dense clouds of smoke, odors and vapors which are
caused in the operation of said tar factory. Exceptions
were sustained to all those parts of the answer the aver-
ments of which have been specifically set forth. A repli-
cation was filed, a stipulation of facts was entered into
which substantially admitted the allegations of the bill, a
hearing was had, and a decree was entered perpetually en-
joining the city from interfering with the complainant in
the work of constructing and removing the tanks.

The original bill presented only the question of the con-
stitutionality of the application of the amended ordinance
to the work begun by the complainant before the amend-
ment, under permits granted in accordance with the ordi-

nances in existence at the time. The bill conceded the applicability of the original ordinances to the complainant's case. The amended bill did not concede such applicability. It ignored the ordinances both before and after the amendment, and planted itself upon the proposition that it was necessary to comply only with sections 229 and 230. The answer again introduced sections 691, 692 and 693 into the case, as well as sections 1432 and 2358 and the amendments to all these sections, by setting them up and claiming that a compliance with such ordinances was necessary to the complainant's right to relief. The court having sustained exceptions to the answer so far as these ordinances are concerned, the record presents the questions whether the ordinances were by their terms applicable to the complainant, and if they were so applicable, whether it was a constitutional exercise of legislative power so to apply them. Both these questions are involved in this appeal, since the appellant must succeed in both to procure a reversal of the decree. The constitutional question is therefore involved so as to authorize the appeal to this court. (*Rittenhouse & Embree Co.* v. *Brown & Co.* 254 Ill. 549.) It is unnecessary to decide it, however, since a proper construction of the ordinances makes it unnecessary.

Section 693 has no application, for it refers only to underground tanks for the storage of oils which will not stand the test of 150 degrees Fahrenheit. Sections 1432 and 2358 are still more remote. They refer to methods of operation. Section 692 refers only to the keeping or storage of certain kinds of oil or other liquids, and it is section 691, only, which deals with the question of the construction or erection of buildings for the storage of such liquids. As it was prior to the amendment it did not purport to regulate the erection of buildings for the storage of tar or any of its compounds. The city had not exercised the power of regulation in this respect. Any person might erect a building for the storage of tar which did not violate any ordinance

of the city, and the permit issued to complainant was evidence of its compliance with the ordinances. The amendment, by inserting the words "tar or any compound thereof" in the section, extended the application of the section to those substances. But it is an established rule of construction that legislative acts operate in the future, only, and are never to be given a retrospective effect if susceptible of any other construction. An intention that a statute or an ordinance shall have a retrospective operation is not to be presumed but must be manifested by clear and unequivocal language, and in case of doubt the statute or ordinance must be construed to have a prospective effect, only. (*Cleary* v. *Hoobler,* 207 Ill. 97.) The ordinance as amended provides that it shall "hereafter" be unlawful to erect buildings for the purposes mentioned. Before the ordinance went into effect, the complainant, under the authority of the one permit, had completed the removal and installation of two of the three tanks mentioned and only a small portion of the roof of the other remained to be completed to finish the work. Under the other permit a contract amounting to $25,000 had been entered into for the construction of the tanks, the concrete foundations had been laid, considerable work had been done, a large part of the steel and other material for the construction of the work had been delivered on the premises and all the material had been purchased. In the absence of the amendment to the ordinance there can be no doubt that the complainant might lawfully proceed with the work to completion. In our judgment the ordinance did not apply to buildings in this situation. While their erection was not completed they were in process of construction, and they may with propriety be regarded as not built after the amendment of the ordinance where the construction was begun and had proceeded to the extent here shown before the passage of the ordinance. It is not to be understood that we hold that any vested right was acquired by the granting of the permit. What we hold

is, that the amendment does not apply to buildings begun and advanced to the extent here shown at the date of the passage of the ordinance. Neither have we considered the complainant's right to use the tanks, when completed, for the storage of tar or any compound thereof. If that question shall arise, it will be when the complainant attempts to make such use of the tanks.

The decree is affirmed.                    *Decree affirmed.*