**K. O. Satterfield, Petitioner-Appellant, v. Fairfield Drainage District No. 2 of Fairfield Township, Bureau County, Illinois; and Henry Brandau et al., Drainage Commissioners of Fairfield Drainage District No. 2 of Fairfield Township, Bureau County, Illinois, Defendants-Appellees.**

Gen. No. 11,151.

Second District, Second Division.

August 22, 1958.

Released for publication September 9, 1958.

Robert H. White, of Geneseo, for petitioner-appellant.

L. D. Spaulding, Jr. of Princeton, for appellees.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is an appeal by petitioner, K. O. Satterfield, from a final judgment entered by the Circuit Court of Bureau County, denying petitioner a writ of mandamus against the drainage commissioners of Fairfield Drainage District No. 2 of Fairfield Township, Bureau County, Illinois, and the drainage district to compel them to clean out certain ditches in that district.

The cause came on for hearing before the court without a jury on the petition of K. O. Satterfield and the answer thereto of the district and the drainage commissioners of the district.

No questions are raised concerning the pleadings or petitioner's standing or capacity to bring this proceeding. Petitioner is the owner of real estate within the boundaries of the defendant drainage district and has paid all of his assessments to the district. In his brief petitioner states his position as follows: "The petitioner's theory is that his lands in the drainage district are not receiving the benefits to which they are entitled, and were intended to receive based upon the classification originally placed upon them, that they can receive these benefits if certain ditches are cleaned out, that the benefits to be derived from the proposed work will exceed the cost thereof, and that based upon the evidence presented, the Court should have issued the Writ of Mandamus." On the other hand, it is the defendants' contention that petitioner's lands in the district are receiving all the benefits to which they are entitled, that petitioner failed to show that the ditches

381

are in immediate need of cleaning out, and that in the absence of such a showing the determination of the commissioners that the ditches are not in need of cleaning cannot be questioned. It is, therefore, apparent that the issue on this appeal resolves itself into the question of whether the petitioner made a sufficient showing that the drainage ditches in question required repair and cleaning out at this time. After lengthy hearings involving the testimony of some 12 witnesses and the admission into evidence of several exhibits, the trial judge held that the petitioner was not entitled to the relief sought and entered judgment for the defendants. From that judgment petitioner takes this appeal.

The legal principles applicable in a case of this kind have long been settled in this State.

██ The Illinois Constitution, Art. IV, Sec. 31, authorizes the General Assembly to vest the corporate authorities of drainage districts "with power to construct and maintain levees, drains and ditches and to keep in repair all drains, ditches and levees" theretofore constructed under the laws of the State by special assessments upon the property benefited thereby. Under the provisions of the Illinois Drainage Code, commissioners of drainage districts are permitted to do all acts necessary for the purpose of constructing, repairing, or maintaining any drain, levy or other work of the district (Ill. Rev. Stats. 1955, Chap. 42, par. 4—14). The Drainage Code further provides that the commissioners "shall keep the drains, levees, pumping plants and other works of the district in operation and repair," and that they may, without prior authorization from the court, use the corporate funds of the district for the repair and maintenance thereof when such repair and maintenance does not involve any substantial material alteration, enlargement or extension of the

drainage system of the district. In addition, the Drainage Code provides that if the commissioners find that by reason of error in locating or constructing any part of the drainage system, any lands in the district do not receive the benefits contemplated when assessments were made for the work, the commissioners shall use corporate funds of the district to achieve the results contemplated in order that all lands, so far as practicable, shall receive the benefits for which they were assessed (Ill. Rev. Stats. 1955, Chap. 42, par. 4—15). It has been held that the duties of the drainage commissioners do not end with the completion of the drainage system, and that they have a duty to maintain it and keep it in repair (Stoddard v. Keefe, 278 Ill. 512; Kendall v. Montgomery, 222 Ill. App. 552, 558). This duty is not a discretionary one (Thompson v. Hughes, 286 Ill. 128, 133), but is a continuing duty which the commissioners owe to every landowner in the district (People ex rel. Smith v. Barnes, 324 Ill. 93).

 It has been settled in this State that mandamus is the proper remedy to compel commissioners to give a landowner the benefits from drainage to which he is entitled (Stoddard v. Keefe, 278 Ill. 512; Cleary v. Hoobler, 207 Ill. 97). However, it is equally well settled that mandamus is not a writ of right, that the granting or denial of the writ is a matter resting within the discretion of the trial court, and that a refusal to grant the writ will not be disturbed on appeal unless the reviewing tribunal is convinced that the finding of the trial court is against the manifest weight of the evidence (Swick v. Bentley, 308 Ill. App. 451). In addition, mandamus is an extraordinary remedy, and the party seeking the writ must produce proof sufficient to show a clear right to the writ (People ex rel. Pignatelli v. Ward, 404 Ill. 240; Bengson v. City of Kewanee, 380 Ill. 244).

The defendant drainage district is a small district located in the northwest corner of Bureau County, Illinois, and consists of approximately 4,000 acres. Petitioner is the owner of 240 acres of farm land located in the district, and through his farm running in a generally southeasterly direction is an open ditch called "Lateral No. 2" which empties into the Main Ditch of the district, also an open ditch. Lateral No. 2 and the Main Ditch were cleaned out in 1947, and a portion of Lateral No. 2, located on the land of petitioner was cleaned out in 1951. In the winter of 1955 the commissioners of the district engaged an engineer, one Dwain M. Wallace, to make a survey and a study of the ditches. The report of Mr. Wallace was submitted to the commissioners in March of 1956, but no action was taken on the report of the engineer prior to the filing of this suit on August 8, 1956. The defendant drainage commissioners are owners of lands within the district. Petitioner was a drainage commissioner at the time that the drainage engineer was engaged to make the survey but is no longer a commissioner.

Petitioner rested his case in large part upon the testimony of Dwain M. Wallace, an engineer with experience in drainage problems who prepared various exhibits admitted into evidence. It appears from his testimony that the ditches in question are filled with silt and vegetation approximately 1½ to 2½ feet above the grade line established by him. Lateral No. 2 varies in depth from 3½ to 7 feet from the surface to the bottom of the ditch as surveyed by Engineer Wallace. The Main Ditch varies in depth from the point where it is joined by Lateral No. 2 to its outlet from 5 to 14 feet from the surface to its present depth as indicated by the Wallace survey. Witness Wallace testified that the ditches are filled with silt and brush,

384

and that they should be cleared of such material and the bottom deepened to the grade line established by him. The profile prepared by Wallace indicates the diameter of the various outlets of drain tiles or surface ditches. There was testimony of several witnesses that the land in the district is largely underlaid with sand strata, and the ditch, being in the same strata, drains the silt and controls the elevation of the water table. By the water table is meant that level at which free water is found if a hole is dug in the ground. It was the contention of the petitioner and his witnesses that the water table should be kept at a distance of 4 feet from the surface, while witnesses for the defendants contended that a water table at 1½ to 2½ feet is sufficient to grow crops.

There was evidence that if the sand subsurface was completely drained to a depth of 4 feet, the surface dries, cracks and becomes unsuitable as a growing medium. There was also testimony by one of the defendants' witnesses that, because of this peculiar nature of the soil, it is better that silt be allowed to collect to some degree in the ditches to form an impervious layer so as to prevent sands from running in the ditches and causing the valuable top soil also to be lost into the drainage ditch. It was undisputed that the petitioner's lands have not sustained substantial damage from any inadequacies of the drainage ditches, although the parties agree that sustaining substantial damage is not a prerequisite to the petitioner obtaining the relief which he seeks. There was testimony that Mr. Satterfield, the petitioner, was unable to plant 10 acres in 1955 after an unusual 9-day period of rain; otherwise, there appears to be no evidence in the record as to any damage to the productivity of petitioner's land.

■ ■ Without recounting in detail the proof adduced by the parties, it may be said that the evidence as to the condition of the drainage ditches and the effect upon lands in the district was in conflict and not conclusive in supporting the contentions of either the petitioner or the defendants. The burden of proof was petitioner's, and it was incumbent upon him to show convincingly that his lands were not receiving the drainage benefits which they should have and to which they were entitled and which they would receive if certain ditches then allegedly in need of repair were repaired. The trial court apparently concluded that the evidence in the record failed to show by a preponderance of the evidence that petitioner's farm is not receiving the benefits to which he is entitled and which he received and was intended to receive based upon the classification originally placed upon his land. Considering all the evidence and the various theories advanced by the respective parties, we cannot say that the conclusion of the trial judge was incorrect and that he erred when he refused to compel the commissioners to clean out the two ditches in controversy. It is true that there is evidence in the record tending to show that the drainage commissioners made but infrequent inspections of the ditches and did not even study the drainage engineer's report.

The drainage district employed a drainage engineer to make a survey and report thereon at the expense of the district. Yet the commissioners did not bother to read the engineer's report prior to the filing of this suit. Under ordinary circumstances, it could be. said that the commissioners failed to give careful attention to their duties and did not accept the responsibility imposed upon them by law. While we do not condone such inaction, nevertheless, their inactions alone can-

not be determinative of the ultimate issue involved herein. It was incumbent upon petitioner to show a clear right to the writ which he sought. The trial judge, who heard all the evidence and saw and heard the witnesses testify, in the face of conflicting evidence, held that petitioner had not shown a clear right to the writ and denied petitioner the writ of mandamus. We are not inclined to disturb his order. In our view, the order of the trial judge was correct, and accordingly it is affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.