Elizabeth McQueeney, Plaintiff-Appellee, v. Catholic Bishop of Chicago, a Corporation Sole, Defendant-Appellant.

Gen. No. 47,523.

First District, Third Division.
April 22, 1959.
Rehearing denied June 22, 1959.
Released for publication June 22, 1959.

Andrew J. Farrell, of Chicago (Thomas J. Weithers, of counsel) for defendant-appellant.

James J. Kilgallon, of Chicago, for appellee.

JUSTICE BRYANT delivered the opinion of the court.

This is an appeal by defendant from a judgment entered in favor of plaintiff on a verdict of the jury for $30,000 for damages for personal injuries sustained on the premises of St. Bernard's church. A post-trial motion for judgment notwithstanding the verdict and, in the alternative, for a new trial was overruled.

The instance of which plaintiff complains occurred on January 28, 1956. Plaintiff was nearly 86 years old at that time. She had been a regular attendant at St. Bernard's church for more than fourteen years. On that day, as she left the church, she walked down

the steps from the church entrance to street level. She was carrying an umbrella and a purse. When she got to the last of five steps, her feet went out from under her. She fell, broke her hip, and suffered permanent injuries. Since no question is raised as to the amount of the damages, it is not necessary to consider the nature of the injuries.

The bottom stair was 35 feet in width, the second stair 33 feet, and the third stair 31 feet. The two top stairs are divided into three sections by columns. The fourth stair is divided into eight-foot sections, and the fifth or top stair is divided into seven-foot sections. There were no handrails on any of the stairs.

The complaint alleges the existence of Section 67–10.3 of the Municipal Code of Chicago relating to handrails, which is as follows:

"67–10.3. (a) All stairways shall have walls, railings or guards on both sides and shall have handrails on both sides except as follows:

(1) Stairs less than forty-four inches wide may have a handrail on one side only.

(2) Intermediate handrails, continuous between landings, shall be provided where required to provide a lateral distance between handrails not exceeding eighty-eight inches.

(b) In Assembly Units every handrail mounted on a wall shall have its ends returned and joined to the wall."

It also alleges the existence of Section 78–5 of the Municipal Code of Chicago, which is as follows:

"78–5. Existing buildings other than dwellings as defined in section 78–12 of this chapter shall comply with all applicable exit requirements of this code and with the special provisions of sections 78–5.1 to 78–5.3, inclusive."

A violation of the duty upon which the liability of defendant was predicated is based upon its failure to

furnish the stairway with a handrail or guard in accordance with the requirements of the provisions of the Municipal Code of Chicago.

There are three points advanced by defendant for reversal: (1) that plaintiff was guilty of contributory negligence as a matter of law, (2) that the sections of the ordinance relied on by plaintiff were not applicable to defendant, and that therefore, there was no violation of duty on behalf of defendant, and (3) that plaintiff's instruction number 5 had been improperly given.

█ The evidence indicates that plaintiff was elderly, that she wore bifocal glasses but was able to observe the condition of the steps and did so, and that, while she went down the steps, she was "kind of looking out on the street." She does not contend that the steps were slippery, or that her fall was caused by moisture on the steps, but only that defendant was negligent in not complying with the ordinance of the city of Chicago relating to handrails at exits. In view of this situation we cannot say as a matter of law that plaintiff was guilty of contributory negligence. There was no evidence of any negligent conduct whatsoever on the part of plaintiff.

Defendant's second contention, that the provision of the ordinance is not applicable to it, is based upon the fact, admitted by all, that St. Bernard's church was built long before the section of the ordinance was passed of which a violation is alleged. The legal proposition submitted by defendant is that the ordinance is effective only prospectively, that there was no violation of duty on behalf of defendant, and that motions for directed verdict made by defendant in the course of the trial below should have been granted.

Plaintiff, however, contends that, when Section 67–10.3 is read in context with the other provisions, it applies retroactively, so as to render defendant liable.

556

■ ■ The law in Illinois on determination of retroactivity of statutes (ergo, ordinances) is clear: ". . . The presumption is that a statute is intended to operate prospectively only, and that it will not be construed to have retroactive operation unless the language employed is so clear that it will admit of no other construction." People v. Capo, 393 Ill. 342, at 344. Any doubt is therefore resolved against retroactivity and in favor of prospectivity only. People ex rel. Manczak v. Carpentier, 3 Ill.2d 556. See generally 29 West Ill. Digest, Statutes, Section 263; 34 I.L.P., Statutes, Section 193, pp. 154–155.

Chapter 67 of the Municipal Code is the chapter on exit requirements, Section 67–1 provides that all buildings or structures erected after passage of the ordinance shall comply with the provisions of that chapter. Section 67–10.3 makes specific provisions for handrails on exit stairways, according to their width. If the ordinance is to be applied retrospectively, then it appears that defendant has violated this section. But there are no provisions in chapter 67 which prescribe such retrospective application.

Chapter 78 of the ordinance governs existing (including pre-ordinance) buildings. Within this chapter lies the language which must be analyzed with care in order to determine whether it prescribes the retroactive application of Section 67–10.3.

Section 78–1 provides that every existing building shall comply with the provisions of chapter 78. Section 78–2 defines both existing and pre-ordinance buildings so that the former encompasses the latter. Section 78–3(b) provides that:

"Every existing building shall comply with the code requirements in force and applicable to such building at the time of its construction or alteration and shall also comply with such provisions of this code which are specifically made applicable to existing buildings."

Section 78–5 provides that:

"Existing buildings other than dwellings . . . shall comply with all *applicable* exit requirements of this code *and* with the special provisions of sections 78–5.1 to 78–5.3, inclusive." (Emphasis supplied.)

It is conceded by all that Sections 78–5.1 through 78–5.3 in no ways affect the situation which is here in question. The application of Section 67–10.3 depends upon the interpretation of Sections 78–3(b) and 78–5, and especially upon the word applicable, as it is used in Section 78–5.

The case of Chicago v. L. J. Sheridan & Co., Inc., 18 Ill.App.2d 57, which this court recently had before it, involved the interpretation of provisions, including some of the very sections above cited and others similar and analogous to those now being considered. The court there construed certain fire provisions of the code as being retrospective in application. The decision was based partly upon the court's ascertainment of apparent legislative intent, but also upon the court's interpretation of the controversial language of Section 78–4, which is identical in essence to that of Section 78–5. Section 78–4 states:

"Existing buildings shall comply with all *applicable* fire protection requirements of this code *and* with the special provisions of sections 78–4.1 to 78–4.3, inclusive." (Emphasis supplied.)

In regard to its interpretation of the word applicable, the court said:

"Section 78–4 states that existing buildings shall comply with all applicable fire-protection requirements of the code as well as with the further requirements there enumerated. By this language all applicable fire-prevention requirements are specifically made applicable to existing buildings, and these include the provisions of chapters 90, 91 and 92 of the

■■■■■■■■■■■■■■■

code. To place any other interpretation on the language of these two sections would render the language of section 78–4 meaningless as requiring only a part of the whole which has already been required by section 78–3. . . . Since sections 78–4.1 to 78–4.3, inclusive, are not part of chapters 90, 91 or 92 which are designated as the fire-protection regulations of the code, it was necessary to specifically provide that these sections which also relate to fire protection should apply to existing buildings." (P. 73.)

The provisions of the code requiring the installation of inside standpipes which were there involved were not a part of chapters 90, 91, or 92, but were a part of chapter 64, as the handrail provisions here are a part of chapter 67. Thus the decision rests squarely on the provisions of Section 78–4.

The court relied heavily upon its interpretation of the meaning of the word applicable in the context of the provisions of the code and of the court's views on legislative intent. Applicable was presumed to designate for retrospective enforcement all sections of the code relating to fire protection and regulation which would meet any given fact situation and even affect the very nature of the building in question. A section requiring inside standpipes to be installed in buildings over 80 feet high would not be applicable to a building only 40 feet high; but it would be applicable to, and therefore retrospectively enforced against, a 17-story office building. In the Sheridan case the standpipe provisions of Section 64–2 met that particular situation and affected the very nature of the building in question. Thus they were regarded as applicable and therefore retrospectively enforceable, in view of the language of Section 78–4.

In view of all the various code provisions which have been compared, it seems impossible to distin-

guish this case from the Sheridan case. This court in the Sheridan case definitely embraced an interpretation of the word applicable which is broad enough to require a retrospective enforcement of any provisions of chapter 67 and of any other exit requirements within the code in the instant case under the language of Section 78-5.

There remains for consideration the policy questions which were involved in the Sheridan case, and whether they are equally applicable in the instant case. Chapter 78 in regard to existing buildings has only two sections which make existing buildings subject to certain provisions contained in the building ordinance. One is Section 78-4, which makes them subject to fire protection requirements of this code, and the other is Section 78-5, which makes them subject to exit requirements of this code.

It might be suggested that the Sheridan case is a fire protection case and therefore requires a special policy treatment, while the other, dealing with exits, presents nothing requiring special policy consideration. This apparent distinction, however, loses force when it is considered that the code provisions both for fire regulations and for exit requirements are based upon the power to legislate in the interest of public health, safety, and welfare, and that the establishment and maintenance of proper exit requirements in public buildings is of great importance in protecting public safety and welfare. The code itself puts these two matters jointly in a separate classification, as the fire protection and exit requirements are jointly unique in this code, because Sections 78-4 and 78-5 are themselves unique, and their terms are not duplicated in regard to any other provisions in the code.

As in the Sheridan case, there is no question of the power of the City Council to enact an ordinance making the exit requirements of the code apply retroactive-

ly to existing or pre-ordinance buildings. The only question involved is that of the construction of the applicable provisions of the code. Section 78–5 states that existing buildings shall comply with all applicable exit requirements of "this code." "This code" undoubtedly refers to the code at the time of enactment of the legislation, and the only way to give any real meaning to the word applicable is to construe it to mean "if the provision fits a given situation."

To quote further from the Sheridan case, which seems to us to be controlling as to determining the intent of the ordinance:

"The foregoing analysis of these provisions of the code is in accordance with the long-standing rule that 'the object of construing a statute is to ascertain and give effect to the legislative intent, and in so doing it is proper to consider the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in such former law which were intended to be cured or remedied.' Livingston v. Meyers, 6 Ill.2d 325. Again, in Petterson v. City of Naperville, 9 Ill.2d 233, a case involving the construction of an ordinance, the court said that 'the primary object of a statutory construction is to ascertain and give effect to legislative intent. In ascertaining legislative intent,' the court continued, 'the courts should consider the reason or necessity for the enactment and the meaning of the words, enlarged or restricted according to their real intent. Likewise the court will always have regard to existing circumstances, contemporaneous conditions, and the object sought to be obtained by the statute.'

"No specific formula is required by which it is to be indicated that an ordinance is designated to operate retroactively; the only requirement is that the intent be evident. The method employed in section 78–4, and the purpose of chapter 78, is to state generally

561

that existing buildings must comply with specified additional requirements which are either set out directly or by reference. Under section 78–4 the city council has specifically stated that existing buildings shall comply with all applicable fire-protection provisions of the code. Chapter 78 was passed on December 30, 1949, and therefore all fire-protection requirements which were in existence and a part of the code on that date are enforcible against the then existing buildings, including the one involved in the instant proceedings."

If in the last paragraph of the above quotation we substitute 78–5 for 78–4, we have the instant case.

To paraphrase our finding in the Sheridan case, there is no logical reason, from the standpoint of public health, safety, and welfare, to require buildings constructed subsequent to the passage of the ordinance to provide handrails for wide exits in public buildings while waiving such a requirement for older buildings. Individuals entering and leaving pre-ordinance buildings are entitled to the same degree of safety facilities as those entering and leaving post-ordinance buildings, and we think that it was the intent of the City Council to provide the largest possible means of protection to all.

██ ██ We have considered plaintiff's given instruction number 5, to which objections are made on behalf of defendant on the ground that it is peremptory and, in its reference to provisions of the ordinance, is confusing. All of the sections of the ordinance here involved are set forth *in haec verba* in the instruction, and the fact that the text of the one of the ordinances so set forth refers to other chapters of the Municipal Code which are not involved in this proceeding does not appear to us to create confusion. Although the instruction is peremptory, it sets forth every element of the case. Failure to comply with said

ordinances is charged to be negligence, and the instruction further provides that such prima facie negligence creates a cause of action if it is a proximate cause of the injuries. Therefore it correctly states the law in the case. We do not believe that the giving of the instruction is reversible error.

For the reasons stated the judgment of the Municipal Court of the Village of Oak Park is affirmed.

Judgment affirmed.

FRIEND, P. J., concurs.

BURKE, J., dissenting:

Plaintiff states that the case was tried and decided on the charge that the absence of handrails was the proximate cause of her injuries. Defendant maintains that the handrail ordinance is not retroactive and does not apply to the premises of the defendant. The handrail ordinance upon which the plaintiff relies was adopted by the City Council on December 30, 1949. The church was constructed in 1896. The stairs on the 66th Street side thereof were constructed in the same year. There were no handrails on the steps at any time. The rule is well established that legislative acts operate in the future only and are not to be given a retrospective effect if susceptible of any other construction. An intention that a statute or ordinance shall have a retrospective operation is not to be presumed but must be manifested by clear and unequivocal language, and in case of doubt the statute or ordinance must be construed to have a prospective effect only. Barrett Mfg. Co. v. Chicago, 259 Ill. 578; Reitman v. Village of River Forest, 9 Ill.2d 448, 451; City of Nameoki v. Granite City, 408 Ill. 33, 37; People ex rel. Manczak v. Carpentier, 3 Ill.2d 556, 558; People v. Hummel, 215 Ill. 43. The rules for the construction of an ordinance are the same as those which

govern the construction of a statute. In People v. Capo, 393 Ill. 342, the court said (344): "It is well-established law of this State that the presumption is that a statute is intended to operate prospectively only, and that it will not be construed to have retroactive operation unless the language employed is so clear that it will admit of no other construction."

The handrail ordinance upon which plaintiff rests her case appears in Chapter 67 of the Municipal Code under the heading "Exit Requirements." Section 67–10.3 entitled "Handrails" provides that "(a) All stairways shall have walls, railings or guards on both sides and shall have handrails on both sides except as follows: (1) Stairs less than forty-four inches wide may have a handrail on one side only. (2) Intermediate handrails, continuous between landings, shall be provided where required to provide a lateral distance between handrails not exceeding eighty-eight inches." The foregoing is preceded by Section 67–1 entitled "General Provisions" which reads: "Every building or structure or part thereof, *hereafter erected* shall comply with the requirements of this chapter pertaining to exits. When there are special requirements as provided in chapters 52 to 61, inclusive, for specific occupancies which differ from the general requirements of this chapter, such special requirements shall take precedence." [Italics ours.] The requirements of this chapter, which include the handrail requirements, apply to buildings, structures or parts thereof "hereafter" erected. No ordinance having to do with special requirements as provided in chapters 52 to 61, inclusive, were called to the attention of this or the trial court. We conclude that the "special requirements" mentioned in the last quoted section do not change the application of the first sentence of the section. Plaintiff proceeds on the theory that the provisions of chapter 78 of the

Municipal Code set forth clear and unequivocally an intention to make the handrail provision retroactive. Chapter 78 defines an "existing building" as a "building, structure or part thereof which has been completed and ready for occupancy" and defines a pre-ordinance building as "every existing building, structure or part thereof which was completed or for the construction of which a permit was issued prior to the effective date of this ordinance." An "existing building" includes both pre-ordinance buildings and buildings built subsequent to the enactment of the ordinance.

It is to be noted that section 78–1 provides that every existing building shall comply with the requirements of the chapter. Section 78–3 clearly expresses an intention to have the code requirements in effect at the time of the construction or alteration of the building apply. Chapter 78–3 reads: "General Requirements. (a) Maintenance Required. Every existing building shall be so kept and maintained, in conformity with the applicable provisions of this code, as to eliminate conditions hazardous to the public health and safety. (b) Application of Provisions. Every existing building shall comply with the code requirements in force and applicable to such building at the time of its construction or alteration and shall also comply with such provisions of this code which are specifically made applicable to existing buildings." Section 78–5 reads: "Exit Requirements. Existing buildings shall comply with all applicable exit requirements of this Code and with the special provisions of Sections 78–5.1 to 78–5.3, inclusive." A reading of sections 78–5.1 to 78–5.3, inclusive, shows that none of them refer to handrails. Had the City Council intended to include handrails, such an intention would have been expressed. Reading all the ordinances it is to be noted that the only clear expression in chapter

78 with reference to the application of the provisions therein is set forth in section 78–3, providing that every building shall comply with the code requirements in force and applicable to such building at the time of its construction or alteration. This means that the ordinance in effect at the time of the construction of defendant's building in 1896 apply. There is no evidence that the stairs had been altered since that time.

Section 78–5 provides in substance that existing buildings shall comply with all applicable exit requirements. This means that according to section 78–3 (b) the code requirements in force at the time of the construction or alteration of such building shall apply. The building having been constructed in 1896, the code requirements, if any, in effect at that time, apply. The code does not express an intention to have section 67–10.3, the handrail ordinance, apply to buildings or structures constructed prior to the effective date of the ordinance of December 30, 1949. The first paragraph of the handrail ordinance provides that every building "hereafter" erected shall comply with the requirements of the chapter pertaining to exits. This precedes the handrail ordinance in the same chapter. The intent therein expressed is to have the handrail ordinance act prospectively. The words in section 78–5 that "existing buildings shall comply with all applicable exit requirements," when read in conjunction with section 78–3 (b) that every "existing building shall comply with the code requirements in force and applicable to such building at the time of its construction or alteration," show an intention to have the exit requirements applicable to a building at the time of its construction apply to existing buildings. This means that the handrail ordinance would apply to all buildings constructed since the ordinance was enacted but it does not indicate an intent to have

it apply to pre-ordinance buildings. The term "existing buildings" means buildings erected prior to the effective date of the code and subsequent to the effective date of the code. The last of the special provisions under section 78–5.3 provides that: "All exit areas shall be lighted as required in section 67–17." This special provision would not have been necessitated if section 78–5 made chapter 67 retroactive. On the same reasoning, it would not have been necessary to enact section 78–5.1 (a) and (b) and section 78–5.2 (a), (b) and (c). There are no words in either chapter indicating an intention that the ordinance have retroactive effect. The intention is clearly expressed in both chapters that the handrail ordinance have prospective effect only.

In her argument that the handrail ordinance is applicable to all existing buildings, including the church premises, plaintiff relies heavily upon the recent case of Chicago v. L. J. Sheridan & Co., Inc., 18 Ill.App.2d 57. That opinion called attention to the fact that section 78–4 of the ordinance provides that existing buildings shall comply with all applicable fire protection requirements of the code as well as with further requirements therein enumerated. We said that by this language all applicable fire-protection requirements are specifically made applicable to existing buildings and these included the provisions of chapters 90, 91 and 92 of the code. The decision in the Sheridan case does not aid the plaintiff. The cases of De Wolf v. Marshall Field & Co., 201 Ill. App. 542; Doran v. Boston Store, 307 Ill. App. 456; and O'Donnell v. Barach, 1 Ill.App.2d 157, are of no help to the plaintiff. In each of these cases as in the Sheridan case there was an intent expressed to have the ordinance apply retroactively.

I am of the opinion that the trial court erred in giving plaintiff's instruction No. 5. This was a per-

emptory instruction in that it directed a verdict for the plaintiff. In Hanson v. Trust Company of Chicago, 380 Ill. 194, the court said (197):

"It is well established that the law applicable to different questions may be stated in separate instructions and that the entire law applicable to all the questions involved in the case need not be stated in each. In such cases, they supplement each other and if they fairly present the law of the case when considered as a series, it is deemed sufficient. But the rule is different where an instruction directs a verdict for either party or amounts to such a direction, then in such case it must necessarily contain all the facts which will authorize the verdict directed. [citing cases] When a peremptory instruction omits a fact or circumstance essential to recovery, the law is that such error in the instruction cannot be cured by any other instruction in the series of instructions,"

The most flagrant error in the instruction is that it informs the jury that the defendant is guilty of negligence if the jury find that the defendant failed to comply "with said ordinance." The instruction ignores the rule stated in many cases that the violation of an ordinance is only *prima facie* evidence of negligence. Tuttle v. Checker Taxi Co., 274 Ill. App. 525; Jeneary v. Chicago and Interurban Traction Co., 306 Ill. 392; United States Brewing Co. v. Stoltenberg, 211 Ill. 531. Whether or not the violation of an ordinance constitutes negligence is a question for the jury. The instruction informed the jury that failure to comply with the ordinance makes the defendant guilty of negligence and this in effect directed a verdict for the plaintiff. The instruction is also prolix in that it quotes many ordinances. It also refers to ordinances that are not quoted. The jury are told by the instruction that failure to comply with the unquoted ordinances is negligence, and are left to con-

568

jecture as to the provisions of the unquoted ordinances.

Under the language of section 78–3 (b) the code requirements in force at the time of the construction of the church and stairs apply. I do not know whether there were any code requirements for handrails on the defendant's premises at the time the stairs were constructed, or whether any such requirements would be applicable to the factual situation. The cause should be remanded to give the plaintiff an opportunity to consider whether an application should be made under the liberal provisions of section 46 [Ill. Rev. Stats. ch. 110] of the Civil Practice Act to amend her complaint and for a new trial. As the matter stands she has no case.