DONNA McCARTHY, Indiv. and as Mother and Next Friend of Jessica McCarthy, Plaintiff-Appellant, v. VICTOR KUNICKI *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—03—2775

Opinion filed February 2, 2005.

958

Ambrose & Cushing, P.C., of Chicago (F. John Cushing III, of counsel), for appellant.

Chilton, Yambert, Porter & Young, of Chicago (Laura M. Maul, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Donna McCarthy, brought this premises liability action against defendants, Victor Kunicki and Pam Averi, for injuries sustained by her daughter, Jessica McCarthy, when she slipped and fell on the basement stairs at defendants' home. Following trial, the jury returned a verdict in favor of defendants. On appeal, plaintiff contends the circuit court erred in: (1) striking her causes of action premised on public nuisance; (2) refusing to instruct the jury regarding defendants' violation of housing ordinances; (3) instructing the jury on Jessica's contributory negligence; and (4) prohibiting plaintiff from eliciting testimony from Kunicki that he was aware that city ordinance required the basement stairway to be equipped with a handrail.

In the afternoon on January 1, 1999, Jessica and her parents attended a New Year's Day party at the home of defendants, located at 3043 North Oketo Avenue in Chicago. Jessica, then 13 years of age, testified at trial that she learned that defendants had been caring for a stray kitten, which she spotted outside in defendants' yard. Fearing the impending snowstorm, Jessica brought the kitten inside. Upon her entrance, Jessica encountered Kunicki, who told her that the house cat, Zoe, likely would fight with the kitten. Kunicki suggested that the basement would be the best place for the kitten, but said that she should ask Averi where to put it. Jessica testified that when she asked, Averi told her to go to the basement, where there were rags she could use as a bed for the kitten.

Plaintiff testified that she overheard Averi tell Jessica to take the kitten to the basement. Averi, however, stated that she told Jessica to wait until she finished preparing the appetizers so she could go with her, because she knew the stairs probably would be slippery, and she did not want the kitten to run into the yard. Jessica testified that Averi never told her to wait until she could accompany her outside. Averi denied ever having seen the kitten inside the house or telling Jessica to bring the kitten to the basement. Averi claimed Jessica asked her at least three times if she could go to the basement, after which Averi told Jessica to ask plaintiff for permission to visit the kitten in the basement. Jessica stated that plaintiff knew she was going down to the basement.

Jessica testified that after speaking with Averi, she went outside through the rear family room and then down some wooden steps. When she reached the top of the stairs leading down to the basement, Jessica noticed snow on the stairs and no handrail on the wall. The house was situated to her right, and a partial cement wall to her left. She did not go back inside to ask anyone for help. She stated that she

exercised the same degree of caution she would use going down any outside stairway. With the kitten in her left hand, she proceeded down the middle of the stairs. She walked slowly down one step at a time. When she reached the second step, her right foot slipped out from underneath her. She twisted her body so she would not land on the kitten, holding it on her left side. She slapped her right hand against the wall in an unsuccessful effort to catch herself. Her right leg hit the cement stairs, the kitten ran off, and she slipped again, this time falling to the bottom of the stairs.

Jessica was taken to the hospital where her leg was discovered to be broken. She was placed in a toe-to-thigh cast, which she wore for two months. After that cast was removed, she wore a second cast, which extended from her toes to above her knee cap. One month later, she was placed in slightly smaller cast, which she wore for six weeks. Throughout the time of her injury, Jessica required the assistance of crutches and a wheelchair.

Averi testified that Jessica was a responsible, mature girl for her age. She believed that Jessica had been wearing clog-style shoes on the day of her accident. Averi did not know whether Jessica had asked plaintiff for permission to go down to the basement. Averi stated that she had used the basement stairway two days before, and on the day of, Jessica's accident. She did not think using the basement stairs was unreasonable, even under the snowy and icy conditions.

Kunicki testified that he is a self-employed carpenter, who also has done plumbing and electrical work. He never built a house, but has put additions on homes including his own. He and Averi bought the house on Oketo Avenue in 1994. The house was built in the 1920s, and there was no handrail on the basement stairs when they purchased it. Kunicki and Averi expanded the house from its original 888 square feet by adding a second floor, a back room, and a wraparound porch. Kunicki also extended a portion of the roof and put siding on the house down to the ground. He had traversed the basement stairs throughout the year and was aware that they became "slippery and dangerous when it got icy and snowy out." He was aware that a handrail would have made the stairs safer. He had planned to install a handrail for the basement stairs sometime prior to Jessica's fall. At some point after Jessica fell, Kunicki walked down the basement stairs. Although snow and ice remained on the stairs, he did not consider it unreasonable to use them. In contrast to Jessica's version, Kunicki testified that Jessica told him, "[w]hen I was coming up the stairs, I slipped." He also denied that the kitten was ever inside the house or that he directed Jessica to put the kitten in the basement. He stated that other than himself and Averi, no one required access to the basement.

Plaintiff filed her second amended complaint on May 7, 2002. In count I, plaintiff set forth a cause of action for negligence based on, *inter alia*, defendants' violation of section 13—160—320 of the Municipal Code of Chicago (Code) (Chicago Municipal Code § 13—160—320 (1990)), which requires handrails on stairways. In count III, plaintiff stated a claim under section 7—28—060 of the Code governing public nuisances. Chicago Municipal Code § 7—28—060 (1990). Count V alleged defendants' willful and wanton negligence. In counts II, IV, and VI, plaintiff sought relief under the Rights of Married Persons Act (750 ILCS 65/15 (West 2002)).[1]

On October 23, 2002, defendants moved to dismiss counts III and IV containing claims for public nuisance. The circuit court previously had dismissed these counts on defendants' motion with respect to plaintiff's first amended complaint; however, it reexamined the nuisance claims *in limine* prior to the commencement of trial. Relying on *Young v. Bryco Arms*, 327 Ill. App. 3d 948, 765 N.E.2d 1 (2001), *rev'd*, 213 Ill. 2d 433 (2004), the court pronounced that "[a] public nuisance is an unreasonable interference with a right common to the general public," and concluded that "the alleged failure to maintain this stairway is not a right common to the general public." Plaintiff's counsel argued that contributory negligence was not a valid defense to a nuisance claim. In rejecting the argument, the court informed counsel it had considered that challenge when deciding to dismiss the claims predicated on nuisance.

Prior to trial, plaintiff moved to bar testimony of defendants' expert, who would have testified that section 13—160—320, which requires handrails on stairways, did not apply to the instant case. The circuit court determined that the Oketo house was erected in 1926, prior to the enactment of the Code's requirement for handrails, and ruled that section 13—160—320 did not apply as a matter of law. Based on this finding, the court prohibited from testifying defendants' expert and plaintiff's expert, who opined that the Oketo house was not beyond the purview of section 13—160—320. The issue arose again during trial, when plaintiff's counsel challenged the court's earlier ruling barring plaintiff's expert. The court renewed its previous ruling.

At trial, plaintiff moved *in limine*, seeking the circuit court's permission to elicit from Kunicki that he was aware that under the Code, he was required to install a handrail on the basement stairway,

---

[1]The parties inaccurately refer to the Rights of Married Persons Act (750 ILCS 65/15 (West 2002)) as the Family Expense Act. By the time of trial, plaintiff abandoned counts V (willful and wanton negligence) and VI (Rights of Married Persons Act).

as he had admitted in his deposition. Toward this end, plaintiff's counsel made an offer of proof as to Kunicki's testimony. The court, nonetheless, denied plaintiff's motion.

Following deliberations, the jury returned a verdict in favor of defendants. Plaintiff filed a posttrial motion, which the circuit court denied. Plaintiff timely appeals.

## I

Plaintiff primarily contends the circuit court erred in dismissing her claim for public nuisance premised on defendants' noncompliance with section 13—160—320, entitled "Stairways-Handrails."[2] The relevant portion of section 13—160—320 provides:

> "(a) All stairways shall have walls, railings or guards on both sides and shall have handrails on both sides except as follows:
>
> (1) Stairs less than 44 inches wide may have a handrail on one side only." Chicago Municipal Code § 13—160—320 (1990).

Plaintiff maintains that section 13—160—320 applies retroactively to the Oketo house, which was built in 1926, before the enactment of the former version of that section. In rejecting this argument, the court determined that the "General provision" of the chapter, found in section 13—160—010, requires only prospective application of the handrail requirement. Section 13—160—010 provides:

> "Every building or structure or part thereof, hereafter erected shall comply with the requirements of this chapter pertaining to exits." Chicago Municipal Code § 13—160—010 (1990).

Plaintiff directs this court to *O'Donnell v. Barach*, 1 Ill. App. 2d 157, 116 N.E.2d 912 (1953) (*O'Donnell*), where plaintiff descended the staircase of a three-story apartment building and slipped on the stairs after attempting to reach for a nonexistent handrail on the wall. Defendants argued that the handrail requirement did not apply to the 1909 apartment building. *O'Donnell*, 1 Ill. App. 2d at 158, 160. In resolving the issue, the *O'Donnell* court focused its analysis on former section 39—7 of the Code, which provided:

> "Every building or structure constructed or maintained in violation of any of the building provisions of this code *** is hereby declared to be a public nuisance." Chicago Municipal Code § 39—7 (1949).

The court reasoned that section "39—7 includes not only construction of the building[,] but maintenance as well, and that any violation of the provisions of the Code is declared to be a public nuisance."

---

[2] Section 13—160—320, former section 67—10.3, of the Chicago Municipal Code is located within title 13, chapter 160, which governs building "Exit Requirements."

*O'Donnell*, 1 Ill. App. 2d at 160. It concluded that retroactive application of the handrail requirement was appropriate since " 'the city council, in using those words ["to construct or maintain"] intended to cover, and had in mind, all such stairways built or to be built.' " (Emphasis omitted.) *O'Donnell*, 1 Ill. App. 2d at 161, quoting *DeWolf v. Marshall Field & Co.*, 201 Ill. App. 542, 548 (1916) (*DeWolf*).

Here, plaintiff argues that former section 39—7, as cited in *O'Donnell*, is analogous to section 7—28—060 of the current version of the Code, which states:

> "Every building or structure constructed or maintained in violation of the building provisions of this code *** is hereby declared to be a public nuisance." Chicago Municipal Code § 7—28—060 (1990).[3]

Plaintiff claims the *O'Donnell* court's reasoning as to former section 39—7 applies equally to current section 7—28—060, and similarly requires that the handrail requirements be applied retroactively.

Plaintiff additionally relies on *McQueeney v. Catholic Bishop*, 21 Ill. App. 2d 553, 159 N.E.2d 43 (1959) (*McQueeney*), where plaintiff slipped on church stairs lacking handrails. Plaintiff's claim of negligence was based on the alleged violation of former section 67—10.3 which, plaintiff argued, was retroactive to existing buildings. *McQueeney*, 21 Ill. App. 2d at 555. The *McQueeney* court first noted that chapter 67 itself did not prescribe application of section 67—10.3 to pre-ordinance buildings, but then turned its attention to former section 78—5, which provided:

> "Existing buildings other than dwellings *** shall comply with all applicable exit requirements of this code." Chicago Municipal Code § 78—5 (1949).

The court interpreted section 78—5 to apply retroactively since it found no logical reason, from the standpoint of public health and safety, to require public buildings constructed subsequent to the passage of the ordinance to provide handrails for exits, while waiving such a requirement for older buildings. *McQueeney*, 21 Ill. App. 2d at 562. The court concluded that "[i]ndividuals entering and leaving pre-ordinance buildings are entitled to the same degree of safety facilities as those entering and leaving post-ordinance buildings." *McQueeney*, 21 Ill. App. 2d at 562.

---

[3]Section 7—28—060 cites as its former version section 99—4, which provided in part that "[e]very building or structure constructed or maintained in violation of the building provisions of this code *** in an unsafe condition, or which in any manner endangers the health or safety of any person or persons, is hereby declared to be a public nuisance." Chicago Municipal Code § 99—4 (1976).

Here, plaintiff draws a comparison between former section 78—5, as cited in *McQueeney*, to section 13—196—050, located within chapter 13—196, entitled "Existing Buildings—Minimum Requirements." Section 13—196—050 provides:

> "Existing buildings shall comply with all applicable exit requirements of this code ***." Chicago Municipal Code § 13—196—050 (1990).[4]

Plaintiff urges that just as section 78—5 compelled retroactive application of handrail requirements in *McQueeney*, current section 13—196—050 requires retroactivity in this case. Plaintiff further points out that whereas former section 78—5 applies to "[e]xisting buildings other than dwellings," current section 13—196—050 was modified by the conspicuous omission of the qualifier "other than dwellings."

Defendants counter, maintaining that the circuit court properly determined that the handrail requirement of section 13—160—320 does not apply retroactively since the general provision of section 13—160—010 makes the handrail requirement apply only to all buildings "hereafter erected." Defendants also argue that *O'Donnell* and *McQueeney* are inapposite to the instant case. They contend *McQueeney* does not apply, because in that case (1) section 78—5 applied to all buildings except dwellings, (2) the building was a church open to the public, and (3) plaintiff specifically alleged and cited a violation of section 78—5 in her complaint before the circuit court. Defendants assert that section 13—196—050 foremost requires existing buildings to comply with "all applicable exit requirements of this code," and the word "applicable" means that pre-ordinance buildings first must satisfy the general provision of section 13—160—010, requiring only prospective application of the exit requirements. In distinguishing *O'Donnell*, defendants argue that the handrail requirement provision there, section 64—34, is not the same as current provision section 13—160—320. Defendants contend that "[t]he retroactive provision [in *O'Donnell*], [s]ection 40—2, is also not the same provision that [p]laintiff claims is the retroactive provision in the instant matter (78—5)."[5]

■ Historically, there has been much confusion surrounding the characterization of the word "nuisance," which embraces a wide range

---

[4]Current section 13—196—050 cites as its former version section 78—5.

[5]Defendants misread plaintiff's argument with respect to *O'Donnell v. Barach*, 1 Ill. App. 2d 157, 116 N.E.2d 912 (1953). Plaintiff analogizes the handrail requirement provision in *O'Donnell*, former section 64—34, to the current handrail requirement in section 13—160—320, and the retroactive nuisance provision, former section 39—7, to the current retroactive nuisance provision in section 7—28—060.

of subject matter. *Turner v. Thompson*, 102 Ill. App. 3d 838, 842, 430 N.E.2d 157 (1981) (*Turner*). At common law, a public nuisance was defined as "an unreasonable interference with a right common to the general public," and "the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public." *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 101, 767 N.E.2d 314 (2002). Common law nuisance and statutory nuisance are, however, independent causes of action. See *Donaldson*, 199 Ill. 2d at 100. " 'A municipality has the power to declare anything a nuisance, which is either nuisance per se, a nuisance at common law or statute. A municipality also has the authority to regulate as a nuisance anything in which there could be an honest difference of opinion if, in the municipality's opinion, such item constitutes a nuisance." *Village of Caseyville v. Cunningham*, 137 Ill. App. 3d 186, 189, 484 N.E.2d 499 (1985), quoting *Village of Riverwoods v. Untermyer*, 54 Ill. App. 3d 816, 822, 369 N.E.2d 1385, 1390 (1977). The condition or use of property may constitute a nuisance where some legal right, either private or public, is violated thereby. *Turner*, 102 Ill. App. 3d at 842.

In the case *sub judice*, the resolution of this matter requires that two subissues be addressed: (A) whether defendants' failure to provide a handrail on the Oketa house, a pre-ordinance building, is in violation of the Code so as to constitute a statutory nuisance; and if a violation of the Code is found to exist, (B) whether plaintiff has a private right of action for nuisance under the Code.

## A

There is no dispute that defendants did not equip the basement stairs with a handrail. In so doing, defendants violated section 13—160—320, if that section is deemed to have retroactive effect. An examination of title 13 of the Code, entitled "Buildings and Construction," contains three relevant provisions. First, section 13—160—010, the "General provision" of chapter 13—160, requires every building "hereafter" erected to comply with the requirements of the chapter. The section does not prescribe, nor does it proscribe, the retroactivity of handrail requirements.

■ Next, contained within chapter 13—196, entitled "Existing Buildings—Minimum Requirements," is section 13—196—050, which states that "[e]xisting buildings must comply with all applicable exit requirements of the code." Chicago Municipal Code § 13—196—050 (1990). It is this section which mandates retroactivity of the handrail requirements, as it supplants the general provision, section 13—160—

010, which contains no language relevant to pre-ordinance buildings.[6] This finding runs consonant with the third relevant section of chapter 13—196, section 13—196—010, entitled "Application," which provides that "[e]very existing building shall comply with the code requirements in force and applicable to such building, at the time of its construction or alteration, and shall also comply with such provisions of this chapter which are specifically made applicable to all existing buildings," *i.e.*, section 13—196—050. Chicago Municipal Code § 13—196—010 (1990). Based on sections 13—196—010 and 13—196—050, pre-ordinance buildings are required to provide handrails on outside stairways. See *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434, 581 N.E.2d 656 (1991) (*Kalata*) (former section 78—5, now section 13—196—050, requires that existing buildings meet all exit requirements, including handrail requirements); accord *McQueeney*, 21 Ill. App. 2d at 562. The circuit court erred in finding the handrail requirements are not retroactive.

Since those buildings that do not comply with the handrail requirements are deemed to be in violation of the Code, it must be determined whether such buildings constitute a nuisance under the Code. Section 7—28—060 provides that "[e]very building or structure constructed or maintained in violation of the building provisions of this code *** or which in any manner endangers the health or safety of any person or persons, is hereby declared to be a public nuisance." Chicago Municipal Code § 7—28—60 (1990). As is evident from the plain language of section 7—28—060, defendants' failure to comply with the handrail requirement of section 13—160—320, made retroactive by sections 13—196—010 and 13—196—050, constitutes a statutory nuisance. The circuit court erred in finding, as a matter of law, that the lack of a handrail on defendants' basement stairway is not a nuisance under the Code.

## B

Having found that the Code violation qualifies as a statutory nuisance, next it must be determined whether a private right of action for nuisance is available to plaintiff in this case. The parties agree that no express private right of action exists within the Code. Plaintiff, relying on *Corgan v. Muehling*, 143 Ill. 2d 296, 313, 574 N.E.2d 602

---

[6]Contrary to defendants' position, that one such "applicable" exit requirement is found in section 13—160—010, that general provision does not constitute an "applicable" requirement as intended by section 13—196—050, which is designated specifically for existing buildings. The general provision of section 13—160—010 merely provides for the prospective application of the individual exit requirements intended to promote safety.

(1991) (*Corgan*), maintains that the nuisance ordinance, section 7—28—060, provides an implied private cause of action, which is applicable to Jessica, who was within the class of persons the ordinance was designed to protect.

Defendants broadly assert that it would be against public policy to require a homeowner to be liable for a public nuisance for their private home, which is not open to the public. Rather, a nuisance, they maintain, must involve interference with a right common to the general public, circumstances not present in this case. Defendants argue that no private right of action exists for plaintiff on behalf of Jessica, since she "was not even an intended user of this stairway[,] whereby she cannot be in any type of protected class."

■ "When a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned therein." *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 155, 128 N.E.2d 691 (1955). There are four factors to be considered in determining whether a private right of action may be implied from an ordinance, including whether: (1) plaintiff is a member of the class for whose benefit the statute was enacted; (2) plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) an implied private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115 (1999); *Corgan*, 143 Ill. 2d at 312-13.

Criminal liability is imposed for violations of the public nuisance ordinance, section 7—28—060, which provides:

> "Any person found guilty of violating any of the provisions of this section shall be subject to a penalty of not less than $200.00 nor more than $500.00, or imprisonment not to exceed 10 days, or both such fine and imprisonment for each offense. Each day such violation shall continue shall constitute a separate and distinct offense." Chicago Municipal Code § 7—28—060 (1990).

Although the remedies set forth in the nuisance ordinance are penal in nature, that in itself does not bar a civil remedy. *Lehmann v. Arnold*, 137 Ill. App. 3d 412, 418, 484 N.E.2d 473 (1985). In fact, the appellate court has sanctioned an implied private cause of action for violations of the nuisance ordinance. In *O'Donnell* (absence of handrail) and *Turner* (inadequate lighting), plaintiff-tenants sued their defendant-landlords alleging claims for statutory nuisance for injuries incurred in private apartment buildings. In resolving these cases, the *O'Donnell* and *Turner* courts implicitly acknowledged the existence of a private right of action under the nuisance ordinance.

In *O'Donnell*, plaintiff's complaint alleged defendants' violation of the former handrail ordinance. *O'Donnell*, 1 Ill. App. 2d at 158. The court was called upon to determine whether the ordinance applied retroactively. In finding the ordinance retroactive, the court invoked the public nuisance ordinance, which declared that " '[e]very building or structure constructed or maintained in violation of any of the building provisions of this code ... is hereby declared to be a public nuisance.' " (Emphasis omitted.) *O'Donnell*, 1 Ill. App. 2d at 159, quoting Chicago Municipal Code § 39—7 (1949). The court affirmed the jury's finding in favor of plaintiff.

Similarly, in *Turner*, the appellate court noted, "plaintiff premises her count in nuisance upon *** defendants' alleged failure to adequately light by electricity the exit to the dwelling leased by her from *** defendants in violation of the [Code]." *Turner*, 102 Ill. App. 3d at 842. The court later stated, "[t]he record before us indicates that the nuisance count was pleaded and tried as an action for damages for a public nuisance. Such being the case, the question of plaintiff's contributory negligence is irrelevant to defendants' liability." *Turner*, 102 Ill. App. 3d at 842. The court remanded the case, reinstating the general verdict in favor of plaintiff based on her claim for damages for public nuisance. *Turner*, 102 Ill. App. 3d at 843.

In contrast, in *Thompson v. Tormike, Inc.*, 127 Ill. App. 3d 674, 469 N.E.2d 453 (1984) (*Thompson*), plaintiff slipped and fell in the parking lot of defendant's restaurant due to an alleged unreasonable amount of accumulated ice. Plaintiff's complaint claimed, *inter alia*, that the parking lot constituted a public nuisance. The circuit court dismissed the complaint for failure to state a cause of action. *Thompson*, 127 Ill. App. 3d at 674. On appeal, plaintiff contended that "an action in nuisance may be maintained for compensation for personal injuries against the party responsible for a public nuisance." *Thompson*, 127 Ill. App. 3d at 675. The appellate court examined the nuisance ordinance, former section 99—4 of the Code (now section 7—28—060), and found that "[a] private cause of action is not necessary to achieve the aim of the city [nuisance] ordinance" since "the fines can *** be substantial and in all probability will deter the commission of the offense." *Thompson*, 127 Ill. App. 3d at 675-76. The court also pointed out that a landowner has no duty to remove, or take other precautions against, the dangers inherent in natural accumulations of snow and ice; liability will be imposed only where such conditions result from artificial or unnatural accumulations. The court concluded, "[w]ere we to allow a private cause of action under a public nuisance theory, we would defeat the established law in Illinois regarding liability for removal of snow and ice. We refuse to do so." *Thompson*, 127 Ill. App. 3d at 676.

■ In the present case, it is unnecessary to analyze in detail all four factors to be considered in determining whether a private right of action may be implied from the nuisance ordinance. See *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393, 718 N.E.2d 181 (1999) (*Abbasi*). The Illinois Supreme Court observed in *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 471, 546 N.E.2d 580 (1989): "*Sawyer [Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 389, 432 N.E.2d 849 (1982),] was clear that we will 'imply a private remedy where there exists a *clear need* to effectuate the purpose of an act.' (Emphasis added.) [Citation.] In this case there does not exist a clear need."

Here, application of the fourth factor leads to the same conclusion; a private cause of action under the Code would be identical to plaintiff's common law negligence action based on a violation of the relevant ordinances. A common law negligence action serves to make an injured plaintiff whole when defendant fails to comply with an ordinance, and the threat of liability is an efficient method of enforcing an ordinance. *Abbasi*, 187 Ill. 2d at 395. Further, there are criminal penalties provided by the nuisance ordinance: a violator shall be fined $200 to $500, or may be imprisoned up to 10 days, or both, for each offense committed, and a separate and distinct offense shall be held to have been committed each day the violation continues. Chicago Municipal Code § 7—28—060 (1990). The possibility of substantial fines will uphold and implement the public policy behind the nuisance ordinance, as well as deter violations thereof. See *Thompson*, 127 Ill. App. 3d at 675-76.

Accordingly, an implied private cause of action is not necessary where plaintiff's common law negligence action, in addition to criminal penalties, constitutes an adequate remedy. The circuit court did not err in dismissing plaintiff's claims predicated on a violation of the nuisance ordinance.

## II

■ Plaintiff next claims the circuit court committed reversible error when it refused plaintiff's tendered jury instructions on defendants' violations of the Code as they relate to negligence. Plaintiff concentrates on three instructions. Plaintiff's tendered jury instruction 17, modeled after Illinois Pattern Jury Instruction, Civil, No. 60.01 (2000) (hereinafter IPI Civil (2000)), sets forth section 13—160—320 (handrail requirements) and states that the ordinance was in force at the time of Jessica's accident, and should the jury decide that defendants violated that section, it may consider that fact together with all other facts and circumstances in evidence on the question of defendants' negligence. Plaintiff's tendered jury instructions 11 and

25, modeled after IPI Civil (2000) Nos. 20.01.01 and 20.01, respectively, set forth the manner by which defendants allegedly were negligent, including claims that defendants failed to provide a handrail in violation of section 13—16—320 of the Code.

Defendants insist that the instructions were refused properly where the circuit court found that section 13—160—320 was not retroactive and where Jessica does not belong to the class of persons the ordinance was designed to protect, as she was not an intended user of the basement stairs. Defendants argue that in *Kalata*, where plaintiff fell down stairs at defendant's warehouse, plaintiff's place of employment, the court noted that plaintiff, as a regular user of the stairway, was within the class of persons the ordinance was designed to protect. *Kalata*, 144 Ill. 2d at 435.

"Each party has the right to have the jury clearly and fairly instructed upon each theory that was supported by the evidence." *Nassar v. County of Cook*, 333 Ill. App. 3d 289, 297, 775 N.E.2d 154 (2002) (*Nassar*). "The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." *Leonardi v. Loyola University*, 168 Ill. 2d 83, 100, 658 N.E.2d 550 (1995) (*Leonardi*). Illinois Supreme Court Rule 239(a) (177 Ill. 2d R. 239(a)) provides that when an IPI is applicable, it shall be used unless the court determines it does not state the law accurately. *Snelson v. Kamm*, 204 Ill. 2d 1, 31, 787 N.E.2d 796 (2003). The decision to give or deny a jury instruction is within the discretion of the circuit court, and a new trial should be granted only if a party's right to a fair trial has been prejudiced seriously. *Palmer v. Mount Vernon Township High School District 201*, 269 Ill. App. 3d 1056, 1062, 647 N.E.2d 1043 (1995) (*Palmer*).

In Illinois, the violation of an applicable statute or ordinance is *prima facie* evidence of negligence. *Kalata*, 144 Ill. 2d at 434. A party injured by such a violation must show that (1) she belongs to the class of persons the ordinance was designed to protect; (2) the injury is of the type the ordinance was designed to prevent; and (3) the violation proximately caused the injury. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256, 720 N.E.2d 1068 (1999).

In the instant case, the circuit court incorrectly determined that section 13—160—320 is not retroactive and erred in finding, as a matter of law, that section 13—160—320 did not apply to the Oketo house. Where the court's refusal to give plaintiff's tendered jury instructions was premised on its mistaken ruling as to retroactivity, the court's refusal to give the instructions was error as well.

First, Jessica was a member of the class the handrail requirement

was designed to protect. Although former section 78—5 states that "[e]xisting buildings other than dwellings *** shall comply with all applicable exit requirements of this code" (Chicago Municipal Code § 78—5 (1949)) the current version of that section has been amended, in section 13—196—050, to state that "existing buildings shall comply with all applicable exit requirements of this code" (Chicago Municipal Code § 13—196—050 (1990)). By removing the phrase "other than dwellings," the language of section 13—196—050 evinces the city council's intent to have the exit requirements, including the handrail requirement, apply to all buildings, public and private alike. Further, despite defendants' protestations to the contrary, there was evidence that defendants directed Jessica to use the stairway to the basement, thereby making her an intended user of the stairway in these circumstances.

Second, Jessica's injury is of the type the ordinance was designed to prevent. "[A] purpose of the [handrail] ordinance is to prevent injuries as a result of falls down a stairway ***." *Kalata*, 144 Ill. 2d at 435.

Third, the violation was a potential proximate cause of Jessica's injury. Jessica testified that she "slapped [her right hand] against the wall trying to catch [her]self," but found nothing to grab onto, thereby creating the inference that the absence of the handrail proximately caused her injuries. In other cases, where plaintiff's fall down a stairway potentially was caused by the absence of handrails, the issue of proximate cause has been held to be a question of fact for the jury. See *O'Donnell*, 1 Ill. App. 2d at 160-61; *Kalata*, 144 Ill. 2d at 435-38; *Murphy v. Messerschmidt*, 68 Ill. 2d 79, 87, 368 N.E.2d 1299 (1977); *Doran v. Boston Store of Chicago*, 307 Ill. App. 456, 461, 30 N.E.2d 778 (1940); *cf. Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 137-39, 606 N.E.2d 641 (1992). The circuit court committed reversible error by refusing to instruct the jury on the handrail ordinance.

### III

■ Plaintiff next contends that the circuit court erroneously instructed the jury on defendants' affirmative defense of Jessica's contributory (comparative) negligence where no evidence in support thereof was presented at trial. Relying on *Owens v. Stokoe*, 115 Ill. 2d 177, 504 N.E.2d 251 (1986) (*Owens*), plaintiff asserts that the defense was not entitled to the instruction where it failed to introduce evidence "that Jessica failed to exercise that degree of care that a reasonably prudent person would have used for her own safety under like conditions and that such a failure was the proximate cause of her injury." Plaintiff believes defendants established that there was nothing

intrinsically unreasonable or negligent in walking down the stairs; Averi and Kunicki each had gone into the basement earlier that day and did not consider it unreasonable, and there was no evidence that Jessica's manner of descending the stairs was negligent.

Defendants claim there was overwhelming evidence of Jessica's negligence to justify the contributory negligence instruction, namely that: plaintiff and Averi each testified that Jessica was an intelligent, mature young woman; plaintiff stated that Jessica could appreciate that snow was on the ground and the dangerous condition thereby created; Jessica testified that she knew there was snow and/or ice on the stairs and there was no handrail, yet decided to proceed; Jessica was wearing clog-type shoes; she did not ask for assistance or complain about the condition; she walked down the middle of the stairs without bracing herself against the side of the house; Averi testified that she told Jessica not to go down to the basement without her; and Jessica never asked plaintiff for permission to go down to the basement. Defendants accurately claim that this case is distinguishable from *Owens*, where the supreme court held that oral surgery performed by defendant, rather than plaintiff's oral hygiene, refusal to have X rays taken, or failure to get a second opinion, was the proximate cause of plaintiff's injury. Based on this finding, the court held that "[t]he record simply did not show evidence of contributing negligence that was the proximate cause of injury." *Owens*, 115 Ill. 2d at 184.

Contributory negligence is defined as a lack of due care for one's own safety as measured by an objective reasonable person standard. *Reid v. Employers Mutual Liability Insurance Co.*, 14 Ill. App. 3d 174, 179, 302 N.E.2d 108 (1973). The test of such negligence is not the frequency with which the act has been safely completed by others, but whether plaintiff, at the time of the occurrence, used that degree of care which an ordinarily careful person would have used for his or her own safety under like circumstances. *Reid*, 14 Ill. App. 3d at 179. Ordinarily, it is the jury's responsibility to consider whether plaintiff's actions amounted to contributory negligence (*Wilson v. Missouri Pacific R.R. Co.*, 169 Ill. 2d 170, 176, 661 N.E.2d 282 (1996)); the question of contributory negligence is one of fact for the jury. *Moran v. Aken*, 93 Ill. App. 3d 774, 777, 417 N.E.2d 846 (1981). Instructions regarding plaintiff's contributory negligence are not proper where there is no testimony or other evidence from which a finding of contributory negligence might be made. *Smith v. Bishop*, 32 Ill. 2d 380, 385, 205 N.E.2d 461 (1965). "The degree of evidence sufficient to establish contributory negligence must be determined from the facts of each case." *Green v. Brown*, 8 Ill. App. 3d 638, 640, 291 N.E.2d 19 (1972). Each party has the right to have the jury clearly and fairly

instructed upon each theory supported by the evidence. *Nassar*, 333 Ill. App. 3d at 297. Whether to give a jury instruction is within the discretion of the circuit court, and a new trial is granted where there has been a substantial deprivation of the right to a fair trial. *Palmer*, 269 Ill. App. 3d at 1062.

In the case at bar, the circuit court concluded there was a sufficient evidentiary basis to warrant defendants' instructions on contributory negligence. Averi testified that she told Jessica to wait for her before going to the basement, but Jessica went ahead. She also stated that Jessica was wearing clog-style shoes on the day she fell. Jessica testified that she was aware that there was snow on the stairs and that there was no handrail, yet decided to proceed down to the basement. Where only "some evidence" is required to justify the theory of the instruction (*McDonnell v. McPartlin*, 192 Ill. 2d 505, 523, 736 N.E.2d 1074 (2000)), unlike in *Owens*, there was sufficient evidence here to support defendants' contributory negligence instructions. The court did not abuse its discretion in finding the issue to be a factual question for the jury.

## IV

■ Plaintiff's final claim on appeal will be addressed, as it may arise again on remand. This issue involves the circuit court's refusal to allow plaintiff to elicit that Kunicki was aware that the Code required him to affix a handrail on the basement stairway. Prior to trial, plaintiff made an offer of proof as to Kunicki's deposition testimony, wherein Kunicki stated that he had received a permit to put siding on the house, which included putting a railing in the area of the stairway. Kunicki acknowledged that he knew his failure to do so was in violation of the Code. The circuit court allowed plaintiff's counsel to "argue that he knew that the condition was dangerous and he failed to do anything about it," but barred counsel from inquiring of Kunicki as to whether he knew he was in violation of the Code, since the court believed the handrail ordinance did not apply.

The violation of an ordinance is *prima facie* evidence of negligence, but does not constitute negligence *per se*. *Kalata*, 144 Ill. 2d at 434-35. Therefore, defendant may prevail despite an ordinance violation by showing that he or she acted reasonably under the circumstances. *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902, 908, 661 N.E.2d 413 (1996). One who is injured as the proximate result of an ordinance violation by another is not deprived of his or her remedy because the injured person did not know of the ordinance. 65 C.J.S. *Negligence* § 146 (2000). The admission of evidence is within the sound discretion of the circuit court, which will not be reversed unless that discretion clearly was abused. *Snelson*, 204 Ill. 2d at 33.

Here, in establishing defendants' negligence based on an ordinance violation, plaintiff is not required to show defendants' awareness of the violation since the violation itself is *prima facie* evidence of negligence. Kunicki's knowledge of the violation, therefore, is irrelevant as to whether defendants were negligent. The court's ruling was not an abuse of discretion.

For the reasons set forth above, the judgment of the circuit court of Cook County is reversed, and the cause remanded for a new trial.

Reversed and remanded.

KARNEZIS, P.J., and HOFFMAN, J., concur.